No. 23-13205

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

---

Joel Galarza, et al.,

*Plaintiffs-Appellants*,

v.

One Call Claims, LLC, et al.,

*Defendants-Appellees*.

---

On Appeal from the United States District Court
for the Southern District of Alabama
No. 1:21-00250-N

---

## APPELLEES' RESPONSE BRIEF

---

Ann Abrams Price
Taylor Jans Graham
BOULETTE GOLDEN & MARIN L.L.P.
2700 Via Fortuna, Suite 250
Austin, Texas 78746
T: (512) 732-8900
F: (512) 551-9602
ann@boulettegolden.com

Counsel for Appellee, Texas
Windstorm Insurance Association

W. Jackson Wisdom
MARTIN, DISIERE, JEFFERSON & WISDOM, LLP
808 Travis, Suite 1100
Houston, Texas 77002
T: (713) 632-1795
F: (713) 222-0101
wisdom@mdjwlaw.com

Counsel for Appellees One Call
Claims, LLC, Kristi Smoot, and Kelly Smoot

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, Appellees Texas Windstorm Insurance Association (hereinafter "TWIA") and One Call Claims, LLC, Kristi Smoot, and Kelly Smoot (hereinafter collectively "OCC") hereby certify that the following are persons and entities that have an interest in the outcome of this appeal:

Bachus, Brom & Taylor, L.L.C. – Counsel for TWIA, Defendant/Appellee

Boulette Golden & Marin L.L.P. – Counsel for Texas Windstorm Insurance Association, Defendant/Appellee

Carpenter, Katherine – Plaintiff/Appellant

Coal, Dukes, Kirkpatrick & Crowley, P.C. – Counsel for OCC, Defendants/Appellants

Davis, Davis & Associates, P.C. – Counsel for Plaintiffs/Appellants

Galarza, Joel – Plaintiff/Appellant

Graham, Taylor J. – Counsel for TWIA, Defendant/Appellee

Kirkpatrick, Mark – Counsel for OCC, Defendants/Appellees

Martin, Disiere, Jefferson & Wisdom, L.L.P. – Counsel for OCC, Defendants/Appellants

Nelson, Hon. Katherine P. – United States Magistrate Judge

One Call Claims, LLC – Defendant/Appellee

Price, Ann Abrams – Counsel for TWIA, Defendant/Appellee

Rosenthal, Ian – Counsel for Galarza, et al, Plaintiffs/Appellants

Smoot, Kristi – Defendant/Appellee

Smoot, Kelly – Defendant/Appellee

Starnes, Davis, Florie LLP – Counsel for TWIA, Defendant/Appellee

Starzyk, Michael A. – Counsel for Galarza, et al, Plaintiffs/Appellants

Starzyk & Associates, P.C. - Counsel for Galarza, et al, Plaintiffs/Appellants

Taylor, Bryan M. – Counsel for TWIA, Defendant/Appellee

TWIA – Defendant/Appellee

Wimberly, Vicki – Plaintiff/Appellant

Wisdom, W. Jackson – Counsel for OCC, Defendants/Appellees


I certify that no publicly traded company or corporation has an interest in the outcome of the case or appeal.


/s/ Ann Abrams Price
Ann Abrams Price
Texas Bar No. 16283850

## STATEMENT REGARDING ORAL ARGUMENT

The magistrate judge[1] properly applied this Court's settled precedents in reaching its conclusion that Plaintiffs, three licensed insurance professionals who contracted with OCC as independent contractors to provide services to TWIA needed because of a spike in claims resulting from Hurricane Harvey, were not "employees" covered by the Fair Labor Standards Act ("FLSA") but rather were independent contractors outside the scope of FLSA protections. The district court's summary judgment order ("Order"), Doc. 123, PageID 1427, is consistent with this Court's application of the economic reality test and rulings in cases considering the alleged employee status of insurance professionals providing claims services in the aftermath of hurricanes. The Order broke no new ground. Appellees are ready and able to participate in oral argument if the Court deems it necessary, but the Order can be affirmed based on the record and the briefs without oral argument.

---

[1] The parties consented to referral to the magistrate judge to conduct all proceedings in this action, including to order entry of final judgment, in accordance with 28 U.S.C. § 63(c), Fed. R. Civ. P. 73, and S.D. Ala. GenLR 73

# **TABLE OF CONTENTS**

STATEMENT OF THE ISSUE ON APPEAL ................................................ 1

STATEMENT OF THE CASE ................................................................. 1

    A.    Nature of the Case ................................................................ 1

    B.    Statement of the Facts .......................................................... 3

        1.    Undisputed Facts Regarding Context and Relationships .............. 3

        2.    Undisputed Facts Demonstrating the Insurance Examiners' Control Over the Manner in Which Work Is Performed .............. 5

        3.    Undisputed Facts Showing the Insurance Examiners' Opportunity for Profit or Loss Depending on Their Managerial Skill ........................................................................ 7

        4.    Undisputed Facts Regarding the Insurance Examiners' Investments ................................................................ 8

        5.    Undisputed Facts Evidencing that the Insurance Examiners Possessed Special Skills Required for the Work ......................... 9

        6.    Undisputed Facts Showing the Lack of Permanency and Duration Indicative of Employee Status ..................................... 10

        7.    Undisputed Facts Regarding the Extent to Which the Services Are an Integral Part of Defendants' Respective Businesses ........ 11

    C.    Standard of Review ............................................................. 11

SUMMARY OF THE ARGUMENT ....................................................... 12

ARGUMENT ................................................................................ 15

I.    THE DISTRICT COURT CORRECTLY APPLIED THE LAW .................. 15

    A.    The District Court Applied the Proper Analysis of Control to Distinguish Independent Contractors from Employees ...................... 15

B.  The *Aimable* Factors Should Not Be Considered ................................ 17

C.  The District Court Did Not Put Undue Weight on the Insurance Examiners' Contractual Designation as Independent Contractors ...... 18

II.  THE DISTRICT COURT CORRECTLY RESOLVED THE FACTS IN ACCORDANCE WITH *SCANTLAND* ............................................................. 19

A.  The District Court Correctly Resolved the Control Factor in Favor of Independent Contractor Status ............................................................. 20

B.  The Insurance Examiners Had Opportunity for Profit and Loss Depending on Their Managerial Skill .................................................... 24

C.  The Specialized Skills Required of the Insurance Examiners Weigh Solidly in Favor of Independent Contractor Status ............................. 25

D.  The Working Relationship Lacked the Permanency and Duration that Indicates Employee Status ................................................................... 26

E.  The District Court Correctly Concluded that the "Investment" and "Integral Part" Factors Merit Little Weight ......................................... 27

CONCLUSION ...................................................................................................... 28

<u>**TABLE OF AUTHORITIES**</u>

**CASES**

*Access Now, Inc. v. Southwest Airlines Co.*,
    385 F.3d 1324, 1331 (11th Cir. 2004) .............................................................. 17

*Aimable v. Long & Scott Farms*,
    20 F.3d 434, 443-44 (11th Cir. 1994)....................................... 13, 15, 17, 18, 20

*Blanco v. Samuel*,
    91 F.4th 1061, 1080 (11th Cir. 2024)........................................................ 17, 18

*Carrell v. Sunland Const., Inc.*,
    998 F.2d 330, 334 (5th Cir. 1993) ........................................................ 2, 22, 24

*Faludi v. U.S. Shale Sols., L.L.C.*,
    950 F.3d 269, 276 (5th Cir. 2020) ..................................................................... 24

*Freund v. HiTech Satellite, Inc.*,
    185 F. App'x 782, 783 (11th Cir. 2006)...................................................... 23, 24

*Garcia-Celestino v. Ruiz Harvesting, Inc.*,
    843 F.3d 1276, 1294 (11th Cir. 2016) ........................................................ 17, 18

*Halferty v. Pulse Drug Co.*,
    821 F.2d 261, 267 (5th Cir. 1987) ...................................................................... 3

*Hargrave v. AIM Directional Serv.*, L.L.C.,
    2022 WL 1487020, at *3 (5th Cir. May 11, 2022).................................... 23, 24

*Mednick v. Albert Enters., Inc.*,
    508 F.2d 297, 301-02 (5th Cir.1975).............................................................. 12

*Nieman v. Nat'l Claims Adjusters, Inc.*,
    775 F. App'x 622, 625 (11th Cir. 2019).......................................... 3, 14, 20, 26

*Parrish v. Premier Directional Drilling, L.P.*,
    917 F.3d 369, 381-82 (5th Cir. 2019)......................................................... 23, 24

*Robicheaux v. Radcliff Material, Inc.*,
    697 F.2d 662, 667 (5th Cir. 1983) .................................................................... 19

*Santelices v. Cable Wiring*,
　147 F. Supp. 2d 1313, 1319 (S.D. Fla. 2001) ..................................................... 2

*Scantland v. Jeffry Knight, Inc.*,
　721 F.3d 1308, 1312 (11ᵗʰ Cir. 2013) .... 2, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 27, 28

*Talbert v. Am. Risk Ins. Co., Inc.*,
　405 F. App'x 848, 856 (5th Cir. 2010) ................................................... 14, 24, 26

*Thibault v. Bellsouth Telecomm., Inc.,*
　612 F.3d 843, 845, 847 (5th Cir. 2010) ....................................................... 23, 24

*Usery v. Pilgrim Equip. Co.*,
　527 F.2d 1308, 1312-13 (5th Cir. 1976) ..................................................... 16, 28

*Villarreal v. Woodman*,
　113 F.3d 202 (11th Cir. 1997) .................................................. 13, 15, 16, 18, 20

*Yoder v. Fla. Farm Bureau Cas. Ins. Co.*,
　2022 WL 1055184, at *4 (N.D. Fla. Mar. 9, 2022) .................................... 13, 20

*Yoder v. Fla. Farm Bureau*,
　2023 WL 3151107 (11th Cir. Apr. 28, 2023) ......... 13, 16, 18, 19, 20, 26, 27, 28

## STATUTES

28 U.S.C. § 63(c) ............................................................................................... i

## RULES

Fed. R. Civ. P. 73 .............................................................................................. i

S.D. Ala. GenLR 73 .......................................................................................... i

## STATEMENT OF THE ISSUE ON APPEAL

The issue on appeal is whether the district court correctly held that three licensed insurance professionals (plaintiffs below and appellants here) engaged temporarily to assist in the processing of a surge in claims following a hurricane were independent contractors and not employees.

## STATEMENT OF THE CASE

### A.    Nature of the Case

Appellants Joel Galarza ("Galarza"), Katherine Carpenter ("Carpenter"), and Vicki Wimberly ("Wimberly") (collectively "Insurance Examiners" or "Plaintiffs") are insurance professionals who each entered into independent contractor agreements with Appellee OCC and were assigned by OCC to provide insurance examiner services to Appellee TWIA (collectively "Defendants") in the aftermath of 2017's Hurricane Harvey. The Insurance Examiners were all experienced insurance examiners prior to being engaged; Defendants did not train them on how to perform the basic skills or functions of an insurance examiner; Defendants did not control or direct them in the performance of their work as insurance examiners; they possessed Texas state insurance licenses evidencing their special skills; they handled claims in alternative dispute resolution and/or litigation with authority to settle on TWIA's behalf; they had the opportunity for profit or loss through the exercise of managerial skill; and they were not dependent on Defendants for continued work in the insurance

1

industry.

Galarza filed this action on July 31, 2020, about a year after he voluntarily ended his assignment. [Doc. 1, PageID 1]. On December 9, 2021, and December 15, 2021, respectively, and more than two years after their assignments ended, Wimberly and Carpenter filed their FLSA consent forms seeking to join this action. [Doc. 47, PageID 42; Doc. 48, PageID 43; Doc. 83-2 at ¶ 9, PageID 168].

The district court faithfully applied the six factors recognized by this Court in *Scantland v. Jeffry Knight, Inc*., 721 F.3d 1308, 1312 (11ᵗʰ Cir. 2013), as being "relevant to determining whether an individual is an employee or independent contractor" under the "economic reality test." Order, Doc. 123, PageID 1436-1437. These factors, none of which is dominant, guide the overarching inquiry into "whether an individual is in business for himself or is dependent on finding employment in the business of others." *Scantland*, 721 F.3d at 1312. Accordingly, "'the weight of each factor depends on the light it sheds on the putative employee's dependence on the alleged employer, which in turn depends on the facts of the case.'" *Id*. at n.2 (quoting with approval *Santelices v. Cable Wiring*, 147 F. Supp. 2d 1313, 1319 (S.D. Fla. 2001)). "[W]ith most employee-status cases, there [will be] facts pointing in both directions." *Carrell v. Sunland Const., Inc*., 998 F.2d 330, 334 (5th Cir. 1993).

Significantly, economic independence is not "conditioned on reliance on an alleged employer for one's primary source of income, for the necessities of life."

2

*Halferty v. Pulse Drug Co.*, 821 F.2d 261, 267 (5th Cir. 1987). Instead, the test "examines whether the workers are dependent on" the defendant "for their continued employment *in that line of business*." *Id*. at 268 (emphasis added). This Court upheld independent contractor status in a case involving materially identical facts. *Nieman v. Nat'l Claims Adjusters, Inc*., 775 F. App'x 622, 625 (11th Cir. 2019) (per curiam).

The district court found that the undisputed evidence, viewed as a whole, supported the determination that the Insurance Examiners were in business for themselves when they worked for the Defendants and deemed them to be independent contractors. Order, Doc. 123, PageID 1454-55. Accordingly, the district court granted Defendants' joint motion for summary judgment [Doc. 100].

**B.    Statement of the Facts**

**1.    Undisputed Facts Regarding Context and Relationships**

TWIA was created by the Texas Legislature to provide wind and hail insurance in the Texas gulf coast region to properties that are denied by other insurance carriers. [Doc. 83-1 at ¶ 2, PageID 158]. OCC is an insurance claims services outsourcing company which works with insurance companies to match their need for adjusters with OCC's roster of licensed and experienced adjusters. [Doc. 83-2 at ¶ 2, PageID 167]. In the aftermath of 2017's Hurricane Harvey, TWIA called on OCC to obtain independent adjuster services to deal with the spike in claims in a timely fashion as required by law. [Doc. 83-1 at ¶ 6, PageID 159; Doc. 99-3 at ¶ 4, PageID 726].

3

TWIA is subject to certain statutory requirements that do not apply to regular marketplace insurance including deadlines and a required ethics policy. [Doc. 99-1 at ¶ 9, PageID 721]. TWIA's ethics policy prohibits outside employment or business ventures only if they interfere or conflict with duties and/or obligations to TWIA. [Doc. 105-18 at § 3.5, PageID 1255]. The terms of the insurance policies offered by TWIA also differ from regular marketplace insurance companies. [Doc. 99-1 at ¶ 9, PageID 721]. Accordingly, TWIA requires, through a certification process, that independent examiners be familiar with the legal requirements applicable to TWIA and the terms of TWIA's insurance policies. *Id*.

Galarza directly contacted TWIA shortly after Hurricane Harvey and offered his services as an independent contractor. [Doc. 99-1 at ¶ 3, PageID 719]. At the time, Galarza was working as an independent contractor assigned to an insurance company in Florida. *Id*.

OCC engaged the Insurance Examiners pursuant to independent contractor agreements ("Contractor Agreement") governing their temporary assignments. [Doc. 84-2, PageID 193-197; Doc. 99-3 at ¶ 5, PageID 727; Doc. 83-2 at ¶ 6, PageID 168; Doc. 83-2, PageID 171-75, 177-82]. The Insurance Examiners expressly acknowledged they were independent contractors. [Doc. 84-2 at Recital B and ¶ 3, PageID 193-94; Doc. 83-2 at PageID 171-72 and 177-78].

Galarza and Wimberly provided OCC with IRS Form W-9 identifying their

4

respective LLCs which were formed several years earlier. [Doc. 1-1 at page 19; Doc. 83-2 at ¶ 8, PageID 168, 184; Doc. 92-1 at PageID 631; Doc. 92-2 at PageID 639]. OCC issued payment for some or all of Galarza's and Wimberly's services to their respective LLCs. [Doc. 92-1 at PageID 632-33; Doc. 92-2 at PageID 640-41].

The Insurance Examiners worked remotely for the most part from approximately Spring of 2018 onwards. [Doc. 99-1 at ¶ 16, PageID 722]. The reasons why the Insurance Examiners worked remotely included limited cubicle space at TWIA's facility and the preferences of independent contractors. [Doc. 99-1 at ¶ 17, PageID 722].

**2.    Undisputed Facts Demonstrating the Insurance Examiners' Control Over the Manner in Which Work Is Performed**

As the district court properly concluded, neither TWIA nor OCC controlled or directed the manner in which the Insurance Examiners performed the functions of an insurance examiner. [Doc. 99-1 at ¶ 14, PageID 722; Doc. 99-3 at ¶ 15, PageID 728]. None of the evidence cited by the Insurance Examiners directly contradicts this fact. Order, Doc. 123, PageID 1444.

Neither TWIA nor OCC trained the Insurance Examiners how to perform the basic skills or functions of an insurance examiner. [Doc. 99-1 at ¶ 10, PageID 721; Doc. 99-3 at ¶ 14, PageID 728]. The Insurance Examiners had Texas insurance adjuster licenses when engaged by OCC and obtained these licenses at their own

expense. [Doc. 92-1 at PageID 631; Doc. 92-2 at PageID 639; Doc. 92-3 at PageID 647]. Galarza performed services in the insurance industry as an independent contractor both before and after providing services under his Contractor Agreement with OCC. [Doc. 92-1 at PageID 631-32].

Performing the functions of an independent insurance examiner for TWIA requires the exercise of discretion and judgment. [Doc. 99-1 at ¶ 14, PageID 722]. The work the Insurance Examiners performed included communicating with insureds, reviewing factual information regarding damage estimates, evaluating and making recommendations regarding coverage and value of claims, and individualized analysis of insurance claims as to which litigation was threatened or pending. [Doc. 99-1 at ¶ 11, PageID 721; Doc. 92-1 at PageID 635; Doc. 92-2 at PageID 643; Doc. 92-3 at PageID 650]. The Insurance Examiners had authority to settle claims during the alternative dispute resolution ("ADR") process. [Doc. 99-1 at ¶ 12, PageID 721].

In addition, Galarza and Carpenter both handled insurance claims as to which litigation was pending. [Doc. 99-1 at ¶ 13, PageID 722]. Accordingly, they made recommendations, assisted TWIA's legal counsel, and verified the factual representations made on behalf of TWIA in response to interrogatories. *Id*.

TWIA did not record or track the hours worked by the Insurance Examiners or require them to report their exact hours worked. [Doc. 99-1 at ¶ 18, PageID 723]. The Insurance Examiners offered no evidence that TWIA monitored their remote activities

using software on their computers or how any such monitoring would affect the manner in which they functioned as insurance examiners. Order, Doc. 123 at n.14, PageID 1445.

OCC invoiced TWIA for each day of services provided by its contractors at rates that varied over time. [Doc. 83-1 at ¶ 5, PageID 159]. OCC paid the Insurance Examiners day rates ranging between $500 and $1,200 per day. [Doc. 99-3 at ¶ 11, PageID 728].

The Insurance Examiners do not dispute that they were free to choose when they started work for the day, took lunch, and ended work for the day, at least when working remotely. [Doc. 99-1 at ¶ 7, PageID 720]. The number of days worked per week depended on workload and the preferences of the Insurance Examiners. [99-1 at ¶ 6, PageID 720].

### 3.   Undisputed Facts Showing the Insurance Examiners' Opportunity for Profit or Loss Depending on Their Managerial Skill

The Insurance Examiners had the opportunity for profit or loss by exercising managerial control to minimize their expenses. [Doc. 99-1 at ¶ 20, PageID 723]. Pursuant to their Contractor Agreements, the Insurance Examiners assumed responsibility for all expenses, including, but not limited to, any required state adjusting license fees; business licenses; membership fees and dues; automobile and other travel expenses; meals, apparel, and entertainment; office areas and lodging expenses; and insurance premiums. [Doc. 84-2 ¶ 2(b), PageID 193-94; Doc. 99-3 at

7

¶ 8, PageID 727]. The Insurance Examiners incurred expenses for food, lodging, and transportation during the periods when they temporarily worked on TWIA's premises. [Doc. 99-1 at ¶ 20, PageID 723; Doc. 99-3 at ¶ 6, PageID 727]. While operating remotely, the Insurance Examiners provided their own workspaces and equipment, including computers and cell phones, and were also responsible for Internet service, cell phone service, power, and other business expenses. [Doc. 99-1 at ¶ 19, PageID 723]. In addition, regardless of where they worked, the Insurance Examiners were responsible for expenses incurred in maintaining their licenses and for any insurance they carried. [Doc. 99-1 at ¶ 20, PageID 723]. The Insurance Examiners claimed business expenses as tax deductions, offering another opportunity to exercise managerial skill over such expenses. [Doc. 92-1 at PageID 634; Doc. 92-2 at PageID 641; Doc. 92-3 at PageID 650].

### 4.    Undisputed Facts Regarding the Insurance Examiners' Investments

The District court correctly concluded that the investment factor merits little weight in the present "economic reality" test. Order, Doc. 123, PageID 1450. The administration of insurance claims is not a capital intensive endeavor and is accomplished with computers, telephones, and software. [Doc. 99-1 at ¶ 15, PageID 722]. As noted above, the Insurance Examiners provided their own equipment and workspaces when they worked remotely. [Doc. 99-1 at ¶ 19, PageID 723]. The Insurance Examiners do not offer any evidence that they were required to use

equipment provided by TWIA or, on the other hand, that they could not do their work without TWIA's equipment. Order, Doc. 123, PageID 1450. It is undisputed that both TWIA and OCC were established businesses before engaging the Insurance Examiners and that Galarza offered his services as an independent contractor in the insurance industry both before and after his engagement with OCC. [Doc. 92-1 at PageID 631-32].

5.    **Undisputed Facts Evidencing that the Insurance Examiners Possessed Special Skills Required for the Work**

It is undisputed that the Insurance Examiners were required to be licensed by the state to perform their work for Defendants. [Doc. 92-1, PageID 630; Doc. 92-2, PageID 638; Doc. 92-3, PageID 646]. Further, it is undisputed that the Insurance Examiners had Texas insurance adjuster licenses when engaged by OCC and obtained these licenses at their own expense. [Doc. 92-1 at PageID 631; Doc. 92-2 at PageID 639; Doc. 92-3 at PageID 647].

As licensed and experienced insurance examiners, the Insurance Examiners had transferable skills and were free to market their services to insurers other than TWIA or other potential business partners. [Doc. 99-1 at ¶ 21, PageID 724; Doc. 99-3 at ¶ 7, PageID 727]. There were other hurricanes around the same time as Hurricane Harvey creating opportunities for independent examiners. [Doc. 99-1 at ¶ 21, PageID 724; Doc. 99-2, PageID 725].

9

**6.    Undisputed Facts Showing the Lack of Permanency and Duration Indicative of Employee Status**

There is no dispute that the reason for the Insurance Examiners' engagement was to assist TWIA with a surge in claims resulting from Hurricane Harvey. [Doc. 83-1 at ¶ 6, PageID 159; Doc. 99-3 at ¶ 4, PageID 726]. The Insurance Examiners' assignments to TWIA were expressly temporary in duration. [Doc. 84-2, PageID 193; Doc. 83-2, PageID 171, 177]. Further, they had control of whether to accept further assignments from OCC. Per their Contractor Agreements, it was up to the Insurance Examiners to "advise OCC if [they] wishe[d] to become eligible for future temporary engagements immediately after the completion of [the last] temporary assignment[.]" [Doc. 84-2, PageID 197; Doc. 83-2, PageID 175, 182]. There is no evidence the Insurance Examiners sought additional assignments from OCC apart from TWIA's Hurricane Harvey claims. Order, Doc. 123, PageID 1452.

The Insurance Examiners do not dispute that their engagements were shorter than two full years. [Doc. 99-3 at ¶ 13, PageID 728; Doc. 101-1 at ¶ 2, PageID 755; Doc. 101-4 at ¶ 2, PageID 800; Doc. 101-8 at ¶ 2, PageID 922].

Furthermore, Carpenter's period of assignment to TWIA by OCC was discontinuous. She left in October 2017 for what she described as a better opportunity. [Doc. 99-1 at ¶ 22, PageID 724]. Approximately three months later, in January 2018, Carpenter returned to TWIA. *Id*. As TWIA's activity related to Hurricane Harvey was winding down in the fall of 2019, Carpenter again left to work on insurance claims

10

related to Hurricane Dorian. *Id*.

### 7. Undisputed Facts Regarding the Extent to Which the Services Are an Integral Part of Defendants' Respective Businesses

The district court found that evidence favored the Insurance Examiners on the "integral part" of business factor with respect to OCC and, to a lesser degree, TWIA, considering the Insurance Examiners' limited purpose of dealing with the sharp uptick in claims following Hurricane Harvey. Order, Doc. 123, PageID 1453. The Defendants do not challenge these findings, but explain below the district court was correct in giving this factor little weight. *Id.* at PageID 1454.

## C.    Standard of Review

This Court reviews an appeal from summary judgment *de novo* and applies the same legal standards that control the district court. *Scantland*, 721 F.2d at 1310. Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant if entitled to judgment as a matter of law." While the Court is required to view the evidence and factual inferences in the light most favorable to the non-moving party, "the Court must be mindful of the purpose of Rule 56 which is to eliminate the needless delay and expense to the parties and to the Court occasioned by an unnecessary trial. Consequently, the non-moving party cannot merely rest upon his bare assertions, conclusory allegations, surmises or conjectures." *Nolasco v. AKS Cartage Corp.*, 2018 WL 2322599, at *4 (S.D. Fla. May 22, 2018) (citing *Celotex*

11

*Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

## SUMMARY OF THE ARGUMENT

The district court correctly applied the appropriate standard established by this Court to identify independent contractor status. The focus of the inquiry into whether a worker is an employee under the FLSA or an independent contractor is economic dependence—"whether an individual is 'in business for himself' or is 'dependent upon finding employment in the business of others.'" *Scantland*, 721 F.2d at 1312 (quoting *Mednick v. Albert Enters., Inc.,* 508 F.2d 297, 301-02 (5th Cir.1975)). The relevant factors, although non-exclusive, used by this Court to distinguish between employees and independent contractors include:

(1)    the nature and degree of the alleged employer's control as to the manner in which the work is to be performed;

(2)    the alleged employee's opportunity for profit or loss depending on his managerial skill;

(3)    the alleged employee's investment in equipment or materials required for his task, or his employment of workers;

(4)    whether the service rendered requires a special skill;

(5)    the degree of permanency and duration of the working relationship;

(6)    the extent to which the service rendered is an integral part of the alleged employer's business.

*Id*.

As to the first factor, the type of control that is significant pertains to "the manner in which the work is to be performed." *Id*. "Manner speaks to ***how*** the

12

assigned work is accomplished, not who sets the contours of that assigned work." *Yoder v. Fla. Farm Bureau Cas. Ins. Co.*, 2022 WL 1055184, at *4 (N.D. Fla. Mar. 9, 2022), *aff'd per curiam sub nom. Yoder v. Fla. Farm Bureau*, 2023 WL 3151107 (11th Cir. Apr. 28, 2023) (emphasis added).

Even if the factors listed in *Villarreal v. Woodman*, 113 F.3d 202 (11th Cir. 1997) applied to the control factor for the employee versus independent contractor inquiry (which they do not), these factors, such as power to hire and fire, supervision and control of schedules and working conditions, determination of rate and method of payment, and maintenance of employment records, are simply not helpful to the inquiry. As the district court deduced, these factors "would seemingly apply to all but the most independent of 'independent contractors.'" Order, Doc. 123, PageID 1439.

Similarly, this Court should reject the Insurance Examiners' argument that an alternative to the *Scantland* test should be used in this case. This argument, based on *Aimable v. Long & Scott Farms*, 20 F.3d 434, 443-44 (11th Cir. 1994), was not raised by the Insurance Examiners below. In any event, the *Aimable* factors are used for a different purpose—examining the possibility of joint employment—and, like the *Villarreal* factors, are not helpful for differentiating employees from independent contractors.

In applying the *Scantland* factors and viewing the undisputed facts as a whole and through the lens of economic dependence, the district court properly concluded

13

the Insurance Examiners were independent contractors. More specifically, the undisputed facts show that Defendants did not control the manner in which the Insurance Examiners performed their work. The Insurance Examiners' assertions to the contrary do not bear on the "manner" in which they performed their services, but rather relate to control over "work parameters" or "ground rules" that are consistent with an independent contractor relationship. The district court's conclusions that the Insurance Examiners had the opportunity to increase their profits through the exercise of managerial skill, possessed special skills as evidenced by their insurance licensure, and did not experience the type of permanency or duration indicative of employment in their temporary assignments to assist TWIA with the surge in claims following Hurricane Harvey are amply supported by record evidence and precedent. *See Nieman,* 775 F. App'x at 625*; Talbert v. Am. Risk Ins. Co*., *Inc.*, 405 F. App'x 848, 856 (5th Cir. 2010). Finally, considering that the foregoing four *Scantland* factors weigh in favor of independent contractor status, the district court did not err in determining that the "investment" and "integral part" of business factors merit little additional weight, even assuming they indicated employee status.

There are no grounds on which to reverse the district court and its Order should be affirmed in all respects.

14

## ARGUMENT

## I.    THE DISTRICT COURT CORRECTLY APPLIED THE LAW

The Insurance Examiners' argument below regarding their alleged employee status relied on the wrong inquiry as to the type of "control" at issue in the first *Scantland* factor. This Court should not consider the argument first raised in the Insurance Examiners' opening brief ("Appellants' Br.") that factors other than those established in *Scantland* should be applied (*i.e.*, the *Aimable* factors), but even if considered, this argument should be rejected. In addition, there is no merit to the Insurance Examiners' insinuation that the trial court placed undue weight on their contractual designation as independent contractors. When control over the *manner* in which work is to be performed is analyzed per this Court's instruction in *Scantland*, and the Order is read fairly regarding the weight given the contractual "independent contractor" label, it is clear the district court did not err.

### A.    The District Court Applied the Proper Analysis of Control to Distinguish Independent Contractors from Employees

Citing *Villarreal*, the Insurance Examiners unpersuasively argued below in their renewed motion for summary judgment that this Court considers the following factors relevant to the control inquiry: "whether the alleged employer (1) had the power to hire and fire the employee, (2) supervised and controlled employee work schedules and conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." [Doc. 103, PageID 1026 (quoting

15

*Villarreal*, 113 F3d. at 205)]. *Villarreal* is inapposite; it held that pretrial detainees were excluded from FLSA coverage and did not involve any question of independent contractor status. *Id*. at 207.

The district court appropriately concluded that the *Villarreal* factors "are of limited value in differentiating 'employees' from 'independent contractors'" because, after all, independent contractors are still employed "in some sense of the word" by those with whom they contract. Order, Doc. 123, PageID 1439. As explained recently by this Court, an alleged employer's control over work parameters, including commission rates, "does not go towards the *manner* in which the work is to be performed." *Yoder*, 2023 WL 3151107, at *3 (emphasis in original).

The proper analysis of control for this matter, as made clear by this Court, is whether "it shows an individual exerts such a control over a meaningful part of the business that she stands as a separate economic entity." *Scantland*, 721 F.3d at 1313 (citing *Usery v. Pilgrim Equip. Co*., 527 F.2d 1308, 1312-13 (5th Cir. 1976)). This means that the worker, "as an economic entity, is capable of doing business elsewhere. *Usery*, 527 F.2d at 1315. The district court correctly applied this analysis to the undisputed facts regarding control which, as discussed in more detail below, leads inexorably to the conclusion that the Insurance Examiners were independent contractors.

### B.     The *Aimable* Factors Should Not Be Considered

The Insurance Examiners assert for the first time in their opening brief that the district court should have granted their motion for partial summary judgment as to employee status using the factors set out in *Aimable*[2] rather than the *Scantland* factors listed above. Appellants' Br., Doc. 20, Page 25 of 35. The district court expressly recognized that the parties' briefing below was framed around the *Scantland* factors. Order, Doc. 123, PageID 1438-39 n.8. Accordingly, the Court should disregard this argument because it was not raised below. *See Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) ("[t]his Court has repeatedly held that an issue not raised in the district court and raised for the first time in an appeal will not be considered.").

Even if preserved, the Court should reject this argument. The Insurance Examiners ignore this Court's instruction that the *Aimable* factors are used to help "determine *whether an entity qualifies as an 'employer'* under the FLSA." *Blanco v.*

---

[2] These factors include (1) the nature and degree of control over the workers; (2) the degree of supervision, direct or indirect of the work; (3) the power to determine pay rates or the methods of payment of the workers; (4) the right, directly or indirectly, to hire, fire, or modify the employment conditions of the workers; (5) preparation of payroll and the payment of wages; (6) ownership of facilities where work occurred; (7) performance of a specialty job integral to the business; and (8) investment in equipment and facilities. *Blanco v. Samuel*, 91 F.4th 1061, 1080 (11th Cir. 2024) (quoting *Garcia-Celestino v. Ruiz Harvesting, Inc.*, 843 F.3d 1276, 1294 (11th Cir. 2016).

*Samuel*, 91 F.4th 1061, 1080 (11th Cir. 2024) (emphasis added) (quoting *Garcia-Celestino v. Ruiz Harvesting, Inc.*, 843 F.3d 1276, 1294 (11th Cir. 2016)).[3] Moreover, in *Yoder*, an independent contractor case, this Court recently declined to apply the factors used in *Aimable* and *Garcia-Celestino* for joint employment questions under the FLSA, expressly distinguishing them from the "relevant" *Scantland* economic reality test. 2023 WL 3151107, at *2 n.3. Like the district court concluded regarding the *Villarreal* factors discussed above, the *Aimable* factors "are of limited value in differentiating 'employees' from 'independent contractors.'" Order, Doc. 123, PageID 1439.

### C.   The District Court Did Not Put Undue Weight on the Insurance Examiners' Contractual Designation as Independent Contractors

The Insurance Examiners complain in their opening brief that the district court "did an about face" after identifying that contractual designation of a worker as an independent contractor is not controlling per *Scantland*, and used the label in support of its ruling. Appellants' Br., Doc. 20, Page 23 of 35. Nothing in *Scantland* prevents a court from observing, *as relevant,* the parties' contractual designation that the

---

[3] Indeed, none of the cases cited by the Insurance Examiners involved an independent contractor inquiry. *Aimable* and *Garcia-Celestino* involved the question of whether farm owners were joint employers of farm workers along with the farm labor contractors who undisputedly employed them. *Aimable*, 20 F.3d at 437-39; *Garcia-Celestino*, 843 F.3d at 1280, 1293-94. Similarly, the issue in *Blanco* was whether a nanny was employed by the parents of the children for whom she cared. 91 F.4th at 1079-80.

workers are independent contractors.

Listing numerous findings other than the label of "independent contractor" supporting the conclusion that four of the six *Scantland* factors weighed in favor of independent contractor status, the district court held that the Insurance Examiners were in business for themselves when they worked for Defendants. Order, Doc. 123, PageID 1454-55. The district court observed, *as relevant but not dispositive*, that the Insurance Examiners each executed contracts stating they were independent contractors. *Id*. at n.17 (citing *Robicheaux v. Radcliff Material, Inc*., 697 F.2d 662, 667 (5th Cir. 1983) ("[T]he fact that the plaintiff[s]… signed contracts stating that they were independent contractors, *while relevant*, is not dispositive.").

## II. THE DISTRICT COURT CORRECTLY RESOLVED THE FACTS IN ACCORDANCE WITH *SCANTLAND*

To determine whether an individual is an employee under the FLSA, this Court looks "to the 'economic reality' of the relationship between the alleged employee and alleged employer and whether that relationship demonstrates dependence." *Yoder*, 2023 WL 3151107, at *2 (quoting *Scantland*, 721 F.3d at 1311). As discussed above, this Court set out six non-exclusive factors in *Scantland* and instructed that "[w]hile these factors serve as guides, the overarching focus of the inquiry is economic dependence." 721 F.3d at 1312. Further, "the subsidiary facts relevant to each factor are to be viewed through the lens of 'economic dependence' and whether they are more analogous to the 'usual path' of an employee or an independent contractor.'" *Id*.

19

Using the *Scantland* factors, this Court has upheld the independent contractor status of a licensed insurance professional temporarily engaged to adjust claims in the aftermath of a hurricane. *Nieman*, 775 F. App'x at 624-26. Viewing the facts of the instant case through the proper lens, and as a whole, it is clear the judgement should be affirmed.

### A. The District Court Correctly Resolved the Control Factor in Favor of Independent Contractor Status

Finding it weighed in favor of independent contractor status, the district court applied the correct analysis of the first factor in the *Scantland* "economic reality" test: "the nature and degree of the alleged employer's control as to the *manner* in which the work is to be performed." 721 F.3d at 1311 (emphasis added). As discussed above, the factors listed in *Villarreal* and *Aimable* do not inform on the type of control at issue when distinguishing between "employees" and "independent contractors." "Manner speaks to ***how*** the assigned work is accomplished, not who sets the contours of that assigned work." *Yoder*, 2022 WL 1055184, at *4, *aff'd per curiam*, 2023 WL 3151107 (emphasis added). As further explained by the district court in *Yoder*:

> There will always be parameters of the work to be performed—even independent contractors' work. A homeowner who hires a house painter gets to decide things like paint color, which rooms get painted, and by what date. That does not suggest employee status. . . . The homeowner gets to require a certain level of performance (one coat or two, for example), and he expects the painter to comply.

2022 WL 1055184, at *3.

The Insurance Examiners were licensed insurance professionals with experience as insurance examiners before being engaged by OCC and assigned to TWIA. [Doc. 92-1 at PageID 631-32; Doc. 92-2 at PageID 639; Doc. 92-3 at PageID 647]. Neither OCC nor TWIA trained the Insurance Examiners on how to perform the basic skills or functions of an insurance examiner, nor did Defendants control or direct the manner in which they performed their work as examiners. [Doc. 99-1 at ¶¶ 10, 14, PageID 721-22; Doc. 99-3 at ¶¶ 14-15, PageID 728]. The district court rightly found that nothing offered by the Insurance Examiners directly contradicted Defendants' evidence on these points. Order, Doc. 123, PageID 1444.

The Insurance Examiners' work required discretion and judgment and included communicating with insureds, reviewing factual information, making recommendations regarding coverage and value of claims, and handling claims in alternative dispute resolution proceedings, with authority to settle disputes. [Doc. 99- 1 at ¶¶ 11-12, 14, PageID 721-722; Doc. 92-1 at PageID 635; Doc. 92-2 at PageID 643; Doc. 92-3 at PageID 650]. In addition, Galarza and Carpenter worked on claims in litigation, including making recommendations, assisting TWIA's legal counsel, and verifying factual representations in TWIA's interrogatory responses. [Doc. 99-1 at ¶¶ 13, PageID 722].

Contrary to the Insurance Examiners' argument, the district court did not *ignore* their assertion that they needed approval before making settlement offers and

21

resolving claims. Appellants' Br., Doc. 20, Page 31 of 35. Instead, the district court correctly found that this was within the level of approval a customer can expect over a contractor's "final product," especially where the "final product" was potentially TWIA's money to pay claims, and did not constitute control over the "manner" in which the Insurance Examiners participated in mediations or administered claims. Order, Doc. 123, PageID 1446.

As for their schedules, it is undisputed that the Insurance Examiners were free to choose when they started work, took lunch, and stopped work for the day, at least while working remotely. [Doc. 99-1 at ¶ 7, PageID 720]. TWIA did not record or track the hours worked by the Insurance Examiners or require them to report exact hours worked. [Doc. 99-1 at ¶¶ 6-7, 18, PageID 720, 723]. The Insurance Examiners' claim about installation of software on their computers does not constitute contradictory evidence. Order, Doc. 123, PageID 1445 n.14.

Moreover, as the district court correctly held, even if true, none of the following show control over the "manner" in which the Insurance Examiners performed their work: tracking hours worked, being prohibited from working on Sundays, or potentially being required to work 10 hours per day. *Id*. at 1444-45; *see also, Carrell v. Sunland Const. Inc*., 998 F.2d 330, 334 (5th Cir. 1993) (plaintiffs were independent contractors despite defendant's tight control over their schedules where, *inter alia*, defendants did not control the methods or details of the work).

22

Finally, the district court correctly found that the Insurance Examiners' arguments about Defendants' control over the manner and mode of their pay, specifications about what they wore and how they identified themselves to TWIA's claimants, reporting absences to OCC and keeping records of times and dates worked, needing approval from OCC to be released from assignments, needing to pass TWIA's certification course to familiarize themselves with terms unique to TWIA, and being subject to TWIA's ethics policy did not suggest control over the manner in work was performed but were more like work "parameters" or "ground rules" consistent with independent contractor status. Order, Doc. 123, PageID 1445-46; *see also*, *Freund v. HiTech Satellite, Inc.*, 185 F. App'x 782, 783 (11th Cir. 2006) (alleged employers concern over minimum specifications and customer satisfaction did not constitute control over work methods); *Hargrave v. AIM Directional Serv.*, L.L.C., 2022 WL 1487020, at *3 (5th Cir. May 11, 2022) (unpublished) (mandated compliance with safety policies and procedures was not the type of control indicating employee status); *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 381-82 (5th Cir. 2019) (provision of drilling plan did not establish control where putative employer did not dictate how calculations were completed and directional drillers determined how to make the plan work); *Thibault v. Bellsouth Telecomm., Inc.,* 612 F.3d 843, 845, 847 (5th Cir. 2010) (cable splicer was not an employee despite being given blueprints and told what needed to be fixed or spliced, having a schedule

23

requiring at least 84 hours per week, and needing approval of vacation and break time, as defendant did not specify how to do the splicing); *Faludi v. U.S. Shale Sols., L.L.C.*, 950 F.3d 269, 276 (5th Cir. 2020) (the mere existence of a non-compete clause does not automatically negate independent contractor status); *Talbert,* 405 F. App'x at 856 (5th Cir. 2010) (existence of a non-disclosure agreement does not prevent independent contractor status).

### B.    The Insurance Examiners Had Opportunity for Profit and Loss Depending on Their Managerial Skill

The ability to control expenses and deduction of expenses from taxes are well established as managerial control over profits and losses and show independent contractor status. *See, Freund,* 185 F. App'x at 784 (even though installer did not set prices, he had sufficient control of net profits as a result of variables to be an independent contractor); *Carrell*, 998 F.2d at 333 (independent contractor welders' profits hinged on their ability to control the costs for which they were responsible); *Hargrave*, 2022 WL 1487020, at *3 (making decisions regarding expenses and deducting them from taxes militates towards sufficient control over profits and losses to support independent contractor status); *Parrish*, 917 F.3d at 384 (despite set pay schedule, workers made decisions affecting their expenses showing independent contractor status); *Thibault,* 612 F.3d at 848 (increasing profits by controlling costs for such things as food and housing demonstrated independent contractor status).

The undisputed facts demonstrate that the Insurance Examiners were

24

responsible for a plethora of business expenses (state license fees, automobile and travel expenses, meals, lodging, workspaces, equipment, Internet and cell phone services, and insurance) and claimed expenses as tax deductions. [Doc. 84-2 at ¶ 2(b), PageID 193-194; Doc. 99-3 at ¶¶ 6-8, PageID 727; Doc. 99-1 at ¶¶ 19-20, PageID 723; Doc. 92-1 at PageID 634; Doc. 92-2 at PageID 642; Doc. 92-3 at PageID 650]. The Insurance Examiners do not dispute the district court's conclusion that exercising managerial control to minimize their expenses "would lead to increased profits by allowing [the Insurance Examiners] to keep more of the money they were paid each day." Order, Doc. 123, PageID 1448.

There are no grounds to overturn the district court on this factor.

**C.    The Specialized Skills Required of the Insurance Examiners Weigh Solidly in Favor of Independent Contractor Status**

The Insurance Examiners do not dispute that their roles required state insurance licenses which they obtained at their own expense prior to working for Defendants [Doc. 92-1, PageID 630-31; Doc. 92-2, PageID 638-39; Doc. 92-3, PageID 646-47]. Furthermore, it is undisputed that they learned how to perform the basic functions of insurance examination before working for the Defendants. [Doc. 99-1 at ¶¶ 3, 10, PageID 719, 721; Doc. 99-3 at ¶ 14, PageID 728]. The Insurance Examiners did not contradict Defendants' evidence that they were free to market these transferable skills to other insurers or business partners. [Doc. 99-1 at ¶ 21, PageID 724; Doc. 99-3 at ¶ 7, PageID 727].

25

It is well-settled that insurance licensure demonstrates special skill indicating independent contractor status. *Yoder*, 2023 WL 3151107, at *3; *Nieman*, 775 F. App'x at 625; *Talbert*, 405 F. App'x at 856. This Court's ruling in *Nieman*, and the Fifth Circuit's ruling in *Talbert*, are especially persuasive as both cases involved materially identical circumstances—licensed insurance professionals engaged to service hurricane damage claims—and upheld independent contractor status. *Id*. The district court did not err with respect to this factor.

### D.    The Working Relationship Lacked the Permanency and Duration that Indicates Employee Status

There is no basis to overturn the district court on this factor. The district court properly found that the "permanency and duration" factor shows the Insurance Examiners' independent contractor status. There is no dispute that they were engaged for a specific, temporally limited purpose—to assist TWIA in response to the surge of claims following a hurricane—and they worked for OCC on an explicitly temporary assignment-by-assignment basis. [Doc. 83-1 at ¶ 6, PageID 159; Doc. 99-3 at ¶ 4, PageID 726; Doc. 84-2, PageID 193, 197; Doc. 83-2, PageID 171, 175, 177,182]. This Court in *Nieman*, and the Fifth Circuit in *Talbert*, held these exact circumstances weighed in favor of independent contractor status. *Nieman*, 775 F. App'x at 856; *Talbert*, 405 F. App'x at 856.

Contrary to the Insurance Examiners' argument, the district court did not ignore the fact that their engagements lasted between one-and-one-half years and two years.

Appellants' Br., Doc. 20, Page 30 of 35. Rather, the district court *distinguished* the Insurance Examiners from the facts in *Scantland* that showed the type of permanence and duration indicative of employee status: "Named plaintiffs worked for Knight for an average of more than five years. Their contracts were for year terms, automatically renewed, and were terminable only with thirty days' notice." Order, Doc. 123, PageID 1452 (citing *Scantland*, 721 F.2d at 13181). Furthermore, this Court upheld independent contractor status in *Yoder* despite the insurance agents' average tenure of 18 years. 2023 WL 3151107, at *3.

As to the Insurance Examiners' argument regarding exclusivity, Appellants' Br., Doc. 20, Page 30 of 35, the district court observed the undisputed fact that Carpenter left her assignment with TWIA in October 2017 for "a better opportunity[,]" returned to TWIA approximately three months later, then left again in the fall of 2019 to work on insurance claims related to Hurricane Dorian." Order, Doc. 123, PageID 1444 (citing Doc. 99-1 at ¶ 22, PageID 724).

### E.    The District Court Correctly Concluded that the "Investment" and "Integral Part" Factors Merit Little Weight

Without resolving the dispute between the parties as to whether the investment inquiry requires a "side-by-side comparison," the district court found that even if it did, and even if this factor favored employee status, it merited little weight here. Order, Doc. 123, PageID 1450. In reaching this conclusion, the district court relied on the undisputed facts that the administration of insurance claims is not a capital

intensive endeavor, both TWIA and the Insurance Examiners provided equipment and workspaces, and OCC and TWIA were already established businesses before engaging the Insurance Examiners. *Id.* Moreover, unlike in *Usery*, where all investment and risk capital was provided by the employer, the Insurance Examiners did not contend they could not perform their work without the equipment furnished by TWIA. *Id.* (citing *Usery*, 527 F.2d at 1314).

The district court found that the Insurance Examiners were integral to OCC's business and to TWIA's business, albeit to a lesser extent. Order, Doc. 123, PageID 1453. Defendants do not challenge these findings because, as ruled below, they add little weight to the inquiry given the district court's findings that four of the six *Scantland* factors—control, opportunity for profit through managerial skill, work requiring special skill, and lack of permanency and duration—favor independent contractor status. *Id.; see also, Yoder*, 2023 WL 3151107, at *3 (affirming independent contractor status where district court found four of six Scantland factors favored that classification).

## CONCLUSION

The district court faithfully applied this Court's precedents in ruling that Defendants properly classified the Insurance Examiners as independent contractors. Its Order should be affirmed in all respects.

Date: March 7, 2024

By: */s/ Ann A. Price*
Ann Abrams Price
TX Bar No. 16283850
ann@boulettegolden.com
Taylor J. Graham
TX Bar No. 24099023
taylor@boulettegolden.com

BOULETTE GOLDEN & MARIN L.L.P.
2700 Via Fortuna, Suite 250
Austin, TX 78746
Telephone:      (512) 732-8904
Facsimile:      (512) 551-9602

COUNSEL FOR APPELLEE TWIA

By: */s/ W. Jackson Wisdom*
W. Jackson Wisdom
TX Bar No. 21804025
wisdom@mdjwlaw.com

MARTIN, DISIERE, JEFFERSON &
WISDOM, L.L.P.
808 Travis, Suite 1100
Houston, Texas 77002
Telephone:      (713) 632-1795
Facsimile:      (713) 222-0101

COUNSEL FOR APPELLEES FOR
DEFENDANTS ONE CALL
CLAIMS, LLC, KRISTI SMOOT,
AND KELLY SMOOT

**Certificate Of Compliance**

I certify that this brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f), this brief contains 6,707 words.

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

<em>/s/ Ann A. Price</em><br>Counsel for Appellee TWIA

**Certificate Of Service**

I certify that a true and correct copy of the above and foregoing has been served on the following counsel via the Court's ECF system on this 8th day of March 2024.

Michael A. Starzyk        Email: mstarzyk@starzyklaw.com
Starzyk & Associates, P.C.
8665 New Trails, Suite 160
The Woodlands, Texas 77381

Ian D. Rosenthal        Email: ian@ddalawfirm.com
Davis, Davis & Associates
27180 Pollard Road
PO Box 2925
Daphne, Alabama 36526

_/s/ Ann A. Price_
Ann Abrams Price
TX Bar No. 16283850