No. 23-13205-A

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

**JOEL GALARZA, VICKI WIMBERLY, AND
KATHRINE CARPENTER,**
**Plaintiffs - Appellants,**

v.

**ONE CALL CLAIMS, LLC, KRISTI SMOOT, KELLY SMOOT, AND
TEXAS WINDSTORM INSURANCE ASSOCIATION,**
**Defendants - Appellees.**

**On Appeal from the United States District Court
For the Southern District of Alabama, Southern Division
Case No. 1:21-cv-00250-C**

## APPELLANTS' REPLY BRIEF

**Michael A. Starzyk**
*Counsel for Plaintiff-Appellants*
mstarzyk@starzyklaw.com
**STARZYK & ASSOCIATES, P.C.**
8665 New Trails, Suite 160
The Woodlands, Texas 77381
T: (281) 364-7261
F: 1 (281) 715-5764

**Ian D. Rosenthal**
*Counsel for Plaintiff-Appellants*
ian@ddalawfirm.com
**DAVIS, DAVIS & ASSOCIATES, P.C.**
27180 Pollard Road
Daphne, Alabama 36526
T: (251) 544-4484
F: (251) 621-1520

***ORAL ARGUMENT REQUESTED***

**CERTIFICATE OF INTERESTED PERSONS AND
<u>CORPORATE DISCLOSURE STATEMENT</u>**

Pursuant to Eleventh Circuit Rule 26.1-1, I hereby certify that the following

named persons are parties interested in the outcome of this case:

Bachus, Brom & Taylor, L.L.C. – Counsel for Texas Windstorm Insurance
Agency, Defendant/Appellee

Boulette, Golden & Marin, LLP – Counsel for Texas Windstorm Insurance
Agency, Defendant/Appellee

Butler, M. Warren – Counsel for Texas Windstorm Insurance Agency,
Defendant/Appellee

Carpenter, Kathrine – Plaintiff/Appellant

Coal, Dukes, Kirkpatrick & Crowley, P.C. – Counsel for One Call Claims,
LLC, Kristi Smoot and Kelly Smoot, Defendants/Appellees

Davis, Davis & Associates, P.C. – Counsel for Plaintiffs/Appellants

Galarza, Joel – Plaintiff/Appellant
Graham, Taylor J. – Counsel for Texas Windstorm Insurance Agency,
Defendant/Appellee

Kirkpatrick, Mark – Counsel for One Call Claims, LLC, Kristi Smoot and
Kelly Smoot, Defendants/Appellees

Martin, Disiere, Jefferson, & Wisdom, LLP – Counsel for One Call Claims,
LLC, Kristi Smoot and Kelly Smoot, Defendants/Appellees

Nelson, Hon. Katherine P. – United States Magistrate Judge

One Call Claims, LLC – Defendant/Appellee

Price, Ann Abrams – Counsel for Texas Windstorm Insurance Agency,
Defendant/Appellee

i

Rosenthal, Ian – Counsel for Galarza, et al, Plaintiffs/Appellants

Smoot, Kristi – Defendant/Appellee

Smoot, Kelly – Defendant/Appellee

Starnes, Davis, Florie, LLP – Counsel for Texas Windstorm Insurance Agency, Defendant/Appellee

Starzyk, Michael A. – Counsel for Galarza, et al, Plaintiffs/Appellants

Starzyk & Associates, P.C. – Counsel for Galarza, et al, Plaintiffs/Appellants

Taylor, Bryan M. – Counsel for Texas Windstorm Insurance Agency, Defendant/Appellee

Texas Windstorm Insurance Agency – Defendant/Appellee

Wimberly, Vicky – Plaintiff/Appellant

Wisdom, W. Jackson – Counsel for One Call Claims, LLC, Kristi Smoot and Kelly Smoot, Defendants/Appellees

Date: March 29, 2024

*/s/ Michael A. Starzyk*
*/s/ Ian D. Rosenthal*

**Michael A. Starzyk**
mstarzyk@starzyklaw.com
**STARZYK & ASSOCIATES, P.C.**
8665 New Trails, Suite 160
The Woodlands, Texas 77381
T: (281) 364-7261
F: 1 (281) 715-5764

**Ian D. Rosenthal**
ian@ddalawfirm.com
**DAVIS, DAVIS & ASSOCIATES, P.C.**
27180 Pollard Road
P.O. Box 2925
Daphne, Alabama 36526
T: (251) 544-4484

**ATTORNEYS FOR APPELLANTS
JOEL GALARZA, VICKI WIMBERLY, AND
KATHRINE CARPENTER**

# TABLE OF CONTENTS

**CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT** .................................................................................i

**TABLE OF CONTENTS** ................................................................... iii

**TABLE OF AUTHORITIES** .............................................................iv

**ARGUMENT** ......................................................................................1

    **I.**    **LABELS, BOOKS, AND COVERS** ...................................2

    **II.**    **DISPUTED FACTS MIS-LABELED AS "UNDISPUTED FACTS."** ...................................................................3

    **III.**    **WHATEVER THE TEST DOES, THE RESULT IS THE SAME** ...................................................................9

    **IV.**    **DISTINGUISHABLE (DISPUTED) FACTS MAKE FOR DISTINGUISHABLE PRECEDENT** ...................................10

        **A.**    **Plaintiffs' Status Does Not Turn On Caselaw** .....................10

        **B.**    **Defendants Controlled Plaintiffs' Work** ..............................12

        **C.**    **Plaintiffs Were Economically Dependent On Defendants** ..13

**CONCLUSION** ..................................................................................14

**CERTIFICATE OF COMPLIANCE** ...............................................15

**CERTIFICATE OF SERVICE** ........................................................16

# TABLE OF AUTHORITIES

**CASES**                                                                 **Page(s)**

*Blanco v. Samuel*,
  91 F. 4th 1061 (11th Cir. Jan. 24, 2024) ........................................................1

*Ferguson v. Texas Farm Bureau,*
  No. 6:17-CV-00111-ADA-JCM, 2021 WL 2349340 (W.D. Tex. May 19,
  2021), No. 6-17-CV-00111ADA, 2021 WL 7906826 (W.D. Tex. June 22,
  2021) ........................................................................................................10

*Helix Energy Sol. Group, Inc. v. Hewitt*,
  143 S.Ct. 677 (2023).....................................................................................3

*Nieman v. Nat'l Claims Adjusters, Inc.,*
  775 F. App'x 622 (11th Cir. 2019) ..........................................................10, 11

*Talbert v. Am. Risk Ins. Co., Inc.,*
  405 F. App'x 848  (5th Cir. 2010)............................................................10, 11

*Yoder v. Fla Farm Bureau,*
  2023 WL 3151107 (11th Cir. Apr. 28, 2023)................................................10

**RULES**

Fed. R. Civ. P. 56.................................................................................................10

Fed. R. App. P. 29(d) ..........................................................................................15

Fed. R. App. P. 32(a)(5).......................................................................................15

Fed. R. App. P. 32(a)(6).......................................................................................15

Fed. R. App. P. 32(a)(7)(B) .................................................................................15

Fed. R. App. P. 32 (a)(7)(B)(iii) ..........................................................................15

**OTHER**

Merriam Webster (11th ed. 2003)...............................................................8

**ARGUMENT**

Appellants Joel Galarza, Vicki Wimberly and Kathrine Carpenter (collectively "Plaintiffs") were not required at the summary judgment stage to prove they will win at trial. They were only required to demonstrate there are genuine issues of material fact. On this record, there is more than sufficient evidence to establish that Plaintiffs are entitled to their day in court. Defendants do not attempt to address *Blanco v. Samuel*, 91 F. 4th 1061 (11th Cir. Jan. 24, 2024) in which this Court recently held that summary judgement is not appropriate where one party has submitted sworn testimony and declarations, under penalty of perjury, that raise a genuine dispute of material fact as to whether an employment relationship exists that would qualify plaintiffs for overtime under the FLSA.

"No matter which version of the events may seem more plausible, under the summary-judgment standard, it is not [the court's] role to assess the credibility of [the parties'] assertions" if they raise a genuine dispute of material fact. *Id*., at 1082 The summary judgment granted in favor of Appellees Texas Windstorm Insurance Association ("TWIA"), One Call Claims, LLC, Kristi Smoot, and Kelly Smoot ("OCC") (collectively "Defendants") should be reversed.

## I.    LABELS, BOOKS, AND COVERS.

Throughout their brief, Defendants refer to the Plaintiffs as "Insurance Examiners," to create the illusion they are Independent Contractors. As a matter of

trial advocacy that may be effective, but it does not alter the record evidence of facts that matters at the summary judgment stage. This label, like "Independent Contractor" and "Temporary Assignment" is not determinative in any way of Plaintiffs' status. They persuaded the trial court to take the same approach and rely on labels while disregarding the actual contrary evidence about work put forth by Plaintiffs. Under the trial court's analysis, working for the same companies for one and a half to two years with regular schedules ranging from 55-70 hours each week is still temporary in nature just because it has that label. Defendants echo this in their brief when they state it is undisputed Plaintiffs' engagements were shorter than two full years. Doc. 26 at 10. This begs the question – at what point (in at at-will employment state) is the position no longer temporary? What if the Plaintiffs worked for Defendants for five years? Or ten? Or does permanence never come into play because the form document Defendants prepared and required Plaintiffs to sign was labeled a "Temporary Assignment?"

Defendants also use this term to cleverly imply that, even if this Court finds Plaintiffs are employees, they should still prevail because they are exempt from overtime. To that end, they also use phrases like "exercise of discretion and judgment" to implicate the white-collar administrative exemption. To be clear the United States Supreme Court held last year that employees paid the same way as Plaintiffs are entitled to recover for all the many overtime hours they worked within

their relevant periods. This is because Plaintiffs were paid a day rate, which the Court held in *Helix Energy Sols. Group, Inc. v. Hewitt* 143 S.Ct. 677 (2023), is not a salary. Therefore, any exemptions that might apply to insurance adjusters do not apply to Plaintiffs. Separately, Defendants gave up this fight in their Response to Plaintiffs' Renewed Motion for Partial Summary Judgment. Doc. 106, PageID. 1271 at n. 1.

## II.    DISPUTED FACTS MIS-LABELED AS "UNDISPUTED FACTS."

Defendants dedicate nearly nine pages of their brief to what they call "undisputed facts." Doc. 26 at 3-11. Again, the label at the top does not match the substance. Plaintiffs agree it is undisputed they had no say in the terminology Defendants used in their Independent Contractor Agreements, no say in how they were classified, how many hours they were scheduled and required to work to get their tasks done, how much they were paid, and that they had to ask for authority to settle claims. Beyond that, the term "undisputed facts" can only be used by ignoring Plaintiffs' evidence. The examples Defendants give echo the related determinations of the trial court which breached the applicable summary judgment standard non-movants are entitled to. The alleged "undisputed facts" where the record does not match Defendants' label include the following. In each example the Defendants' representation is stated first, followed by the inconsistent record evidence:

3

1.    Plaintiff Garza directly contacted TWIA and offered his services as an independent contractor. Doc. 26 at 4. This is directly disputed by Plaintiff Galarza. Doc. 101-1, PageID. 755 (¶2).

2.    The Plaintiffs had authority to settle claims at mediation. Doc. 26 at 6. This also is directly disputed by Galarza. Doc. 113, PageID. 1394 (¶8).

3.    TWIA did not record or track the hours the Plaintiffs worked. Doc. 26 at 6. Plaintiffs' timesheets directly contradict this. Doc. 113, PageID. 1394 (¶9); Doc. 101-3, PageID. 779-798 (handwritten notation R 40 and OT 19 – PageID. 795); Doc. 101-6, PageID. 820-881; Doc. 101-10, PageID. 945-982. Each OCC timesheet is signed by not only the Plaintiff, but also a TWIA manager (*see, e.g.,* Doc. 101-6, PageID. 835, 837 (signature of Katie Summers), 841, 847, 851 (signature of Randy Hanks). While labels are not determinative, certainly inconsistent labels are evidence of disputed facts.  The line where each Plaintiff signed their name says, "Employee signature."

4.    Plaintiffs offered no evidence that TWIA monitored their remote activities using software on their computers. Doc. 26 at 6-7. The Declarations of all three Plaintiffs dispute this. Doc. 101-1, PageID. 757; Doc. 101-4 (¶¶20-21), PageID. 801 (¶¶18-19); Doc. 101-8, PageID. 923 (¶¶18-19); Doc. 113, PageID. 1394 (¶¶12-14).

5.    Plaintiffs were free to choose when they started work for the day, took lunch, and ended work for the day – **at least when working remotely**. Doc. 26 at 7 (emphasis added). This is disputed by Plaintiff Galarza. Doc. 113, PageID. 1394 (¶9). Like the trial court's summary judgment analysis, the Defendants' completely ignores that for the first 6-7 months (or about one third of the time Plaintiffs worked for Defendants), Plaintiffs worked in the TWIA offices, and it was only after Defendants became concerned about overtime and lawsuits that they decided to move them to remote work while maintaining the same level of control over all other aspects of the work. Doc. 101-1, PageID. 756 (¶19); Doc. 101-4, PageID. 801(¶20). During this time, TWIA provided all equipment and supplies for Plaintiffs to do their work. Doc. 101-1, PageID. 756 (¶¶11, 14, 18); Doc. 101-4, PageID. 801(¶¶10, 13, 16); Doc. 101-8, PageID. 923 (¶¶9, 12, 16). Defendants' position likewise ignores that Plaintiffs had to report any tardies/absences to OCC's Human Resources Manager and their TWIA direct manager or face penalties of up to one day's pay. Doc. 101-1, PageID. 756 (¶9); Doc. 101-4, PageID. 801(¶8); Doc. 101-8, PageID. 923 (¶7). Finally, it ignores the fact that the Plaintiffs were regularly scheduled 55-70 hours each week (which is inconsistent with any self-determination about

work schedules) and had to work even more hours just to get their work done on time. Doc. 101-1, PageID. 756 (¶8); Doc. 101-4, PageID. 801(¶7); Doc. 101-8, PageID. 923 (¶6).

6.   Plaintiffs had the opportunity for profit or loss by exercising managerial control to minimize their expenses. Doc. 26 at 7. As set forth in Section 5 above, this again ignores that for many months the Plaintiffs worked in the TWIA office and TWIA provided all the equipment and supplies for Plaintiffs to do their work. Doc. 101-1, PageID. 756 (¶¶11, 14, 18); Doc. 101-4, PageID. 801 (¶¶10, 13, 16); Doc. 101-8, PageID. 923 (¶¶9, 12, 16). And this is misleading because when they worked remotely, they only needed a cell phone and computer to do their jobs. Defendants omit, while working remotely, the Plaintiffs still needed access to TWIA's computer network and claims database (including their TWIA e-mails) which did not require Plaintiffs to spend money to maintain. Doc. 101-1, PageID. 757 (¶20); Doc. 101-4, PageID. 801 (¶18); Doc. 101-8, PageID. 923 (¶18). Defendants would have the Court believe, as the trial court did, through Chip DeVilbiss' self-serving Declaration that Defendants' classification of Plaintiffs as Independent Contractors somehow motivated them separately to control the cost of their cell

phone service, internet service and power for their homes. Whether to believe that (and then how to weigh it) is reserved for the trier of fact.

7.    Plaintiffs claimed business expenses as tax deductions, offering another opportunity to exercise managerial control over such expenses. Doc. 26 at 8. Of course they did! Defendants classified them as independent contractors, to avoid paying the expenses they normally would for employees. Defendants did not provide them with W-2s as they should have for employees, and that meant Plaintiffs had to submit tax returns in accord with the labels Defendants unilaterally imposed. This included passing off employment taxes to the Plaintiffs that saved Defendants thousands of dollars each year per "contractor." Plaintiffs did not exercise managerial skill, they used common sense when they were forced to incur expenses that should have been borne by Defendants.

8.    Plaintiffs do not offer any evidence that they were required to use equipment provided by TWIA or that they could not do their work without TWIA equipment when working remotely. Doc. 26 at 8-9. Again, this ignores that for many months the Plaintiffs worked in the TWIA office and TWIA provided all the equipment and supplies for Plaintiffs to do their work. Doc. 101-1, PageID. 756 (¶¶11, 14, 18);

Doc. 101-4, PageID. 801(¶¶10, 13, 16); Doc. 101-8, PageID. 923 (¶¶9, 12, 16). It is also essentially meaningless because the only equipment they needed to do their jobs was a computer and telephone. And it ignores the fact that, when working remotely, Plaintiffs still needed to access TWIA's computer network and claims database (including their TWIA e-mails). Doc. 101-1, PageID. 757 (¶20); Doc. 101-4, PageID. 801 (¶18); Doc. 101-8, PageID. 923 (¶18).

9.    Plaintiffs' assignments to TWIA were expressly temporary in nature. Doc. 26 at 10. Temporary means lasting only for a limited period of time; not permanent. *Temporary,* MERRIAM WEBSTER (11th ed. 2003). Synonyms include, brief, interim, limited, momentary, and short-lived. *Id.* It is undisputed that Plaintiffs worked for Defendants for one and a half to two years. Doc. 101-1, PageID. 755 (¶2); Doc. 101-4, PageID. 800 (¶2); Doc. 101-8, PageID. 922 (¶2). And much like at-will employment, the duration was indefinite and to be determined by TWIA Doc. 101-2, PageID. 764; Doc. 101-5, PageID. 809; Doc. 101-9, PageID. 932. This is not temporary in any sense that matters for whether there is an at-will employment relationship versus an independent contractor relationship. That the trial court used this label to support its determination illustrates the adverse inferences and

8

interpretations that were relied upon en route to a determination that is for a jury to make.

## III.  WHATEVER THE TEST, THE RESULT IS THE SAME.

Defendants make much of the fact the Plaintiffs discussed whether the *Aimable* or economic realities test is appropriate for determining whether the District Court erred in holding that Plaintiffs were contractors or employees. Doc. 26 at 13, 25. The issue was directly addressed when Plaintiffs responded to Defendants' inaccurate contention that the *Aimable* test had been overruled. Doc. 106, PageID. 1273-1274; Doc. 115, PageID. 1398-1399.

Defendants also contend that *Aimable* only deals with FLSA cases involving whether an entity qualifies as an employer and in joint employer situations. Doc. 26 at 17-18. That's precisely what is present in this case. The trial court's statement that the *Aimable* factors are of limited value in differentiating employees from contractors is questionable, since many of the *Aimable* factors overlap with the economic realities test. Doc. 123, PageID. 1439.

The reality is that it does not matter which test this Court applies because the result at the summary judgment stage is the same: While the trial court might find Defendants' factual presentation persuasive, because of the substantial evidence to the contrary the trial court could not properly usurp the role of the finder of fact.

## IV.   DISTINGUISHABLE   (DISPUTED)   FACTS   MAKE   FOR DISTINGUISHABLE PRECEDENT.

### A.    Plaintiffs' Status Does Not Turn On Caselaw.

This appeal does not turn on caselaw. It turns on the record evidence of facts and the proper application of Rule 56. For every *Yoder v. Florida Farm Bureau*, there's a *Ferguson v. Texas Farm Bureau*, No. 6:17-CV-00111-ADA-JCM, 2021 WL 2349340 (W.D. Tex. May 19, 2021), r*eport and recommendation adopted,* No. 6-17-CV-00111-ADA, 2021 WL 7906826 (W.D. Tex. June 22, 2021)(granting summary judgment for the Plaintiffs on the issue of employee status). And for each *Nieman* and *Talbert*, there's a *Partridge, Sakacsi*, *Gordilis*, and *Rivero*. *See* Doc. 20 at 20-21.

Defendants cite two cases to claim that independent insurance professionals engaged to service hurricane damage claims are independent contractors outside the purview of the FLSA.  *Nieman v. Nat'l Claims Adjusters, Inc*., 775 F. App'x 622, 625 (11th Cir. 2019); *Talbert v. Am. Risk Ins. Co., Inc*., 405 F. App'x 848, 856 (5th Cir. 2010). Doc. 26 at 11, 22, 25, 34. The factual record here does not allow for those cases to dictate the result here as a matter of law.

In *Nieman*, this Circuit Court did not find that insurance professionals engaged to service hurricane damage claims are independent contractors outside the purview of the FLSA. Rather, the Court found that <u>Mr. Nieman</u> specifically – and individually - was an independent contractor under the economic realities test

because he controlled how many assignments he took, "controlled his schedule;" provided nearly all of his own equipment (including a vehicle with a ladder, measuring equipment, and photographic and voice recorders); and because he "completed work for another company after he responded to National's initial advertisement and looked for and interviewed for other jobs while he was still engaged with National, which shows that he was not economically dependent on National." *Nieman v. Nat'l Claims Adjusters, Inc*., 775 Fed. Appx. 622, 625 (11th Cir. 2019). Similarly, the *Talbert* plaintiffs "were allowed to set their own hours…[and] were free to work for other insurance companies at the same time." *Talbert v. Am. Risk Ins. Co., Inc*., 405 Fed. Appx. 848, 855–56 (5th Cir. 2010).

This is in stark contrast to the record evidence here. The Defendants dictated what days Plaintiffs could work (and be paid for) and they threatened termination if Plaintiffs did not comply. Doc. 101-4, PageID. 801 (¶20); Doc 101-11, PageID. 983-984; Doc. 113, PageID. 1394 (¶9). TWIA even expressly prohibited the Plaintiffs from any other employment during the period of assignment in its ethics policy. Doc. 105-18, PageID. 1255. And the Plaintiffs were clearly economically dependent on the Defendants, as evidenced by their work schedule and no ability to negotiate how much they would be paid. Doc. 101-1, PageID. 756 (¶¶7, 8); Doc. 101-4, PageID. 800-801 (¶¶6, 7); Doc. 101-8, PageID. 922-923 (¶¶5, 6); Doc. 101-3, PageID. 779-798 (handwritten notation R 40 and OT 19 – PageID. 795); Doc. 101-6, PageID.

820-881; Doc. 101-10, PageID. 945-982. Such limitations add to the multitude of facts (or disputed facts) distinguishing this case from *Nieman* and *Talbert*.

**B.    Defendants Controlled Plaintiffs' Work.**

Defendants attempt to defend the trial court's subjective assessment that tracking hours worked, being prohibited from working on Sundays, or potentially being required to work 10 hours per day are not indicia of control over the manner in which Plaintiffs performed their work. Doc. 26 at 22. Those are exactly the sort of facts which a trier of fact can legitimately find reflect the required control. Or not. But, they are not facts that the trial court could disregard, or minimize, when identifying whether facts were undisputed. It's not just that Plaintiffs were prohibited from working on Sundays, they were threatened with termination. Doc 101-11, PageID. 983-984. It's not just that their hours were tracked (when working both in the office and remotely), it's that the Defendants controlled and directed Plaintiffs' day-to-day tasks. Doc. 101-1, PageID. 756 (¶16); Doc. 101-4, PageID. 801 (¶15); Doc. 101-8, PageID. 923 (¶14); Doc. 113, PageID. 1394 (¶8).

And it's not just that they worked 10 hours per day, it's that they were scheduled 10 hours per day, five to seven days per week, and had to work even more hours off the clock just to keep up with their workloads. Doc. 101-1, PageID. 755-756 (¶¶6-7); Doc. 101-3, PageID. 779-798; Doc. 101-4, PageID. 801 (¶7); Doc. 101-6, PageID. 820-881; Doc. 101-8, PageID. 923 (¶6); Doc. 101-10, PageID. 945-982;

Doc. 113, PageID. 1394 (¶9).

**C.    Plaintiffs Were Economically Dependent On Defendants.**

The *Scantland* economic reality factors, on their own, or in combination with the *Aimable* factors, establish that the Plaintiffs were economically dependent on the Defendants. The fact that two of the Plaintiffs may have had LLC's does not change this result because the LLCs they established to mirror Defendants' characterization of them were just as economically dependent as any lone employee  The undisputed evidence is that all three Plaintiffs worked exclusively for the Defendants during the relevant time periods. Doc. 101-1, PageID. 756 (¶8); Doc. 101-4, PageID. 801 (¶7); Doc. 101-8, PageID. 923 (¶6).

All three Plaintiffs typically worked five to seven days each workweek with schedules that ranged from 55-70 hours per week and required extended hours off the clock to complete their work. Doc. 101-1, PageID. 755-756 (¶¶6-7); Doc. 101-4, PageID. 801 (¶7); Doc. 101-8, PageID. 923 (¶6). And all three Plaintiffs were paid a Day Rate for their work that fluctuated from time to time with no ability to negotiate what rate they would be paid for their work. Doc. 101-1, PageID. 755 (¶¶6-7); Doc. 101-4, PageID. 800 (¶¶5-6); Doc. 101-8, PageID. 922 (¶¶4-5). Defendants point out that before going to work for them, Plaintiff Galarza was working as an independent contractor for another insurance company. Doc. 26 at 4. This does not mean he was properly classified. But it does show how he worked for others, not

13

himself. This is no different than a properly classified employee working for one company and then deciding to accept a job with another. When viewed in the light most favorable to the Plaintiffs, these facts establish at least a genuine issue of material fact precluding summary judgment. That is all the Plaintiffs were required to establish. The trial court's decision should be reversed.

## CONCLUSION

For these reasons, this Court should reverse the trial court's Order granting Defendants' Joint Motion for Summary Judgment and remand this case to the trial court for the trial on the merits they are entitled to as a matter of law under the Federal Rules of Civil Procedure.

**Respectfully submitted,**

*/s/ Michael A. Starzyk*
*/s/ Ian D. Rosenthal*


**Michael A. Starzyk**                    **Ian D. Rosenthal**
mstarzyk@starzyklaw.com          ian@ddalawfirm.com
**STARZYK & ASSOCIATES, P.C.**    **DAVIS, DAVIS & ASSOCIATES, P.C.**
8665 New Trails, Suite 160           27180 Pollard Road
The Woodlands, Texas 77381         P.O. Box 2925
T: (281) 364-7261                       Daphne, Alabama 36526
F: 1 (281) 715-5764                     T: (251) 544-4484

**ATTORNEYS FOR APPELLANTS**
**JOEL GALARZA, VICKI WIMBERLY, AND**
**KATHRINE CARPENTER**

14

## <u>CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)</u>

1. This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) and Fed. R. App. P. 29(d) because it contains 3,080 words, excluding the parts of the brief exempted by Fed. R. App. P. 32 (a)(7)(B)(iii), as calculated by the word-counting feature of Microsoft Office365.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally-spaced typeface using Microsoft Word in 14-point Times New Roman.

Dated:  March 29, 2024

*/s/ Michael A. Starzyk*
Michael A. Starzyk


*/s/ Ian D. Rosenthal*
Ian D. Rosenthal

15

## CERTIFICATE OF SERVICE

I certify that on March 29, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

**W. Jackson Wisdom**
wisdom@mdjwlaw.com
**MARTIN, DISIERE, JEFFERSON & WISDOM, L.L.P.**
808 Travis, Suite 1100
Houston, TX 77002

**Ann Abrams Price**
ann@boulettegolden.com
**Taylor J. Graham**
taylor@boulettegolden.com
**BOULETTE GOLDEN & MARIN L.L.P.**
2700 Via Fortuna, Suite 250
Austin, TX 78746

**Mark Kirkpatrick**
mkirkpatrick@cdklaw.com
**COAL, DUKES, KIRKPATRICK & CROWLEY, P.C.**
2610-B Dauphin St., Suite 101
Mobile, Alabama 36606

**Bryan M. Taylor**
btaylor@bachusbrom.com
**BACHUS BROM & TAYLOR LLC**
3125 Blue Lake Dr., Suite 101
Birmingham, AL 35243

**M. Warren Butler**
wbutler@starneslaw.com
**STARNES DAVIS FLORIE LLP**
11 North Water Street, Suite 20290
Mobile, AL 36602

/s/ Michael A. Starzyk
Michael A. Starzyk

/s/ Ian D. Rosenthal
Ian D. Rosenthal